J-S16005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :         PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| BRUCE ANTONIO ALVARADO | : |
| | : |
| Appellant | : No. 1219 WDA 2025 |

Appeal from the Judgment of Sentence Entered August 28, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004201-2023

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:         **FILED:  July 22, 2026**

Bruce Antonio Alvarado appeals from the judgment of sentence, entered in the Court of Common Pleas of Westmoreland Country, after a jury convicted him of numerous offenses, including two counts of aggravated assault.[1]  Upon careful review, we affirm.

On November 10, 2023, Alvarado and a passenger, Amber Barkhamer, were en route to Pittsburgh from North Versailles on the Tri-Boro Expressway in a stolen Jeep Patriot.  *See* N.T. Trial, 06/03/25, at 113, 123.  On that same evening,

> Officer [Craig] Huhn was working as a patrolman for the Monroeville Police Department in Allegheny County.  While taking his dinner break at around 6:15 p.m., he heard on his police radio that officers were pursuing a Jeep Patriot heading towards the Monroeville area.  Officer Huhn also became aware that the Jeep was reported stolen and there was possibly a firearm inside of it.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1) & (2).

He left his residence, wearing his full police uniform, to assist in the chase.

Officer Huhn drove his marked vehicle to Route 48 in Allegheny County in an attempt to catch up with the pursuit. . . . He thereafter encountered the Jeep and joined the ongoing chase, with the lights and siren on his vehicle activated. . . . The lengthy chase proceeded through multiple jurisdictions in both Allegheny and Westmoreland counties at a high rate of speed. . . .

Eventually, [] stop sticks[2] were successfully deployed on the Jeep. [T]he tires on the Jeep began to deteriorate and it started to smoke. The chase then began to slow down as they approached a roundabout in Allegheny Township.

Officer Huhn formulated a plan to get in front of the Jeep and "box" it in. Once they reached the roundabout, Officer Huhn attempted to get his vehicle in front of the chase. [Officer Huhn] proceeded through the traffic circle, and the Jeep struck the driver's side of his vehicle. His vehicle was directly parallel to the Jeep, with the windows of both vehicles side by side.

Less than two seconds later, Officer Huhn started taking gunfire from the Jeep. [H]e could not exit the driver's side of the vehicle and there was a lot of equipment between him and the passenger door. Therefore, he retracted to the B-pillar[3] of the vehicle because the door could easily be penetrated by bullets and could not provide sufficient cover.

Additionally, the driver's side of Officer Huhn's vehicle was shattered by the gunfire. [Officer Huhn] then realized that he was shot in his left arm. He felt an "excruciating pain" and lost mobility to his hand.

_____

[2] **See** N.T. Trial, 6/3/25, at 90 (explaining stop sticks are plastic cylinders with spikes inside of them that are inserted into a tire when a car runs over them).

[3] A B-pillar is either one of two support posts that connect a vehicle's roof to its body at the rear of the front door. **See** https://www.merriam-webster.com/dictionary/B-pillar (last visited 6/10/26).

Officer Huhn drew his duty weapon and aimed it in the direction of the gunfire. He did not ultimately fire his weapon, however, because he did not have a "good site picture" of the target. . . .

Moreover, Officer Huhn was shot in his left leg as he was trying to get behind the B-pillar of his vehicle. He then decided to retreat from the vehicle. Officer Huhn dove across the passenger seat, grabbed the front passenger's side door handle, and rolled onto the roadway. Officer Huhn testified that he heard at least four to five gunshots.

Officer Huhn asked officers for assistance with a tourniquet and he was attended to at the scene. He was bleeding and felt blood dripping down his hands. [Officer Huhn] recalled an officer administering a tourniquet to his left arm and leg. [He] testified that this hurt and the pain was "excruciating." Officer Huhn was taken by an ambulance to a helicopter that transported him to UPMC Presbyterian [H]ospital. He remained at the hospital overnight for monitoring and medical staff cleaned his wounds. He was also seen by multiple orthopedic surgeons.

The bullet that caused the gunshot wound to Officer Huhn's leg was not ultimately recovered because there was an entry and exit wound. A second bullet, however, remained lodged in his wrist until it was removed via surgery three weeks later. Officer Huhn attended follow-up consultations and appointments after surgery. He also experienced limited mobility in his arm while recovering from the bullet wound, which affected his daily activities. Officer Huhn attended additional medical appointments prior to being physically cleared to go back to work. He remained off of work for six months until he was cleared both mentally and physically for duty.

Officer Huhn sustained additional cuts and bruising on his left eye and right ring finger. [] [H]is wounds resulted in visible scaring on his left forearm, wrist, and calf. These scars were shown to the jury during trial. Ultimately, Officer Huhn testified that this incident affected him physically, psychologically, and emotionally, and impacted his home life.

At the time of trial, Officer Huhn still had bullet fragments in his left arm that could not be removed, and he could tell that one of them was still there. A bullet fragment from the incident was also still in his right ring finger.

Trial Court Opinion, 11/21/25, at 4-10 (citations to record omitted).

On June 6, 2025, a jury convicted Alvarado of numerous offenses, including the two counts of aggravated assault referenced above, and, on August 28, 2025, the trial court sentenced Alvarado to an aggregate term of 40 to 80 years of incarceration. Alvarado filed a timely notice of appeal followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Alvarado raises the following claim for our review:

> Whether the Commonwealth produced sufficient evidence of serious bodily injury to sustain convictions for aggravated assault when there was no evidence of serious risk of death or protracted loss of a bodily function when the victim, Officer Craig Huhn, merely suffered small circular scars as a result of gun[]shot wounds?

Brief of Appellant, at 2.

Alvarado argues there was insufficient evidence to prove that the gunshot wounds suffered by Officer Huhn constituted "serious bodily injury" as defined by 18 Pa.C.S.A. § 2301. Specifically, Alvarado asserts that the Commonwealth "produced no evidence [that] Officer Huhn suffered a substantial risk of death." Brief of Appellant, at 11. While Alvarado concedes that "a victim of virtually any gunshot wound suffers *some* risk of death," he argues that the standard requires that "the individual was wounded to the extent that the risk of death was substantial." *Id.* at 11, 12 (emphasis in original). Alvarado notes that the Commonwealth did not produce any expert medical testimony regarding "*any* risk of death" and the fact that Officer

- 4 -

Huhn's hospitalization was "de minim[i]s" to support his claim. *Id.* (emphasis in original).

Similarly, Alvarado argues that Officer Huhn did not suffer "serious, permanent disfigurement." *Id.* Alvardo relies on a case decided under the Pennsylvania Motor Vehicle Financial Responsibility Law, *Waldinger v. Wokulich*, 293 A.3d 619 (Pa. Super. 2023) (Table), to claim that serious permanent disfigurement "requires that one's appearance, form[,] or beauty be affected or marred in a displeasing, harmful way which is significant and not minor and will not change[.]" *See id.* at 619 (holding victim's two-inch wrist scar was sufficient for serious, permanent disfigurement because scar was prominent and unconcealable). Alvarado claims Officer Huhn provided no testimony as to the obviousness of the scaring, and that due to the scars' sizes and locations, they were concealable and unnoticeable. Brief of Appellant, at 14.

Finally, Alvarado contends that Officer Huhn did not suffer "protracted loss of a bodily function as a result of the gun-shot wounds." *Id.* Alvarado asserts that Officer Huhn provided no medical expert testimony as to the enduring effect of his wounds but, rather, testified that his surgery removed most of the remaining bullet fragments and that he "does not suffer any long term affects from the remaining fragments in his wrist." *Id.* at 15. Furthermore, Alvarado emphasizes the fact that Officer Huhn's six-month leave from work was standard protocol for a shooting event.

We are guided by the following standard of review when presented with a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgement for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007), quoting ***Commonwealth v. Frisbie***, 889 A.2d 1271, 1274-75 (Pa. Super. 2005).

Here, Alvarado challenges his convictions for aggravated assault. A person is guilty of aggravated assault if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life; or
>
> (2) attempts to cause or intentionally, knowingly[,] or recklessly causes seriously bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c)[.]

18 Pa.C.S.A. §§ 2702(a)(1)-(2). Police officers are among the persons enumerated in subsection 2702(c). *See id.* at § 2702(c)(1). Further, section 2301 defines serious bodily injury as injury causing (1) a substantial risk of death, (2) serious, permanent disfigurement, or (3) protracted loss or impairment of the function of any bodily member or organ. *See id.* at § 2301.

The courts of this Commonwealth have previously found serious bodily injury in the context of aggravated assault where the victim sustained gunshot wounds. In *Commonwealth v. Daniels*, 354 A.2d 538, 539 (Pa. 1976), our Supreme Court found the evidence sufficient to support a finding of serious bodily injury where the victim received a gunshot wound and the bullet remained in his body because his doctor recommended that it not be removed. In *Commonwealth v. Phillips*, 410 A.2d 832, 833 (Pa. Super. 1979), where the defendant shot the victim once in the leg and the victim lost consciousness, this Court found that the victim's gunshot wound, along with being hospitalized and unable to walk for a month, resulted in protracted impairment of a bodily member and, therefore, constituted serious bodily injury. *Id.* at 834. Furthermore, in *Commonwealth v. Turner*, 321 A.3d 954 (Pa. Super. 2024) (Table),[4] this Court found that "[a] single gunshot wound to the leg that resulted in the victim being hospitalized constitutes a serious bodily injury." *Id*. at **5.

---

[4] Non-precedential memorandum decisions of this Court filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b)(1)-(2).

Here, Officer Huhn suffered two gunshot wounds that caused him "excruciating pain," caused him to lose all mobility in his hand immediately after being shot, and resulted in limited mobility in his arm for three weeks. Officer Huhn was hospitalized overnight following the shooting and subsequently required surgical intervention to remove the bullet from his wrist. To this day, Officer Huhn has bullet fragments in his left arm and right ring finger, and the bullet wounds left permanent, visible scars on his forearm, wrist, and calf. Thus, viewing the evidence in the light most favorable to the Commonwealth, we conclude that Officer Huhn's wounds constitute serious bodily injury and, therefore, the evidence was sufficient to prove aggravated assault.

Additionally, this Court has previously stated that:

> it is certainly understood that the firing of a gun at another is likely to inflict death or serious injury. Thus, when someone fires a handgun at another, it is assumed the intent was to inflict serious bodily injury or death. The shooter might miss the target, or the bullet might strike something between the muzzle and the intended target[,] or the bullet might simply graze the intended victim causing only superficial injury. In these circumstances, even though serious injury or death was not actually inflicted, it can be safely presumed the intent to inflict such injury was present because it is a common consequence of taking that action.

*Commonwealth v. Robinson*, 817 A.2d 1153, 1160 (Pa. Super. 2003).

Thus, even, assuming, arguendo, that Officer Huhn's gunshot wounds did not constitute serious bodily injury, Alvarado's act of repeatedly firing a gun at Officer Huhn demonstrated his intent to inflict serious bodily injury sufficient to sustain his conviction for aggravated assault. *See id. See also*

*Commonwealth v. McCalman*, 795 A.2d 412, 415-16 (Pa. Super. 2002) (intent to inflict serious bodily injury found where defendant fired gun into occupied car at close range, causing bullet to narrowly miss passenger sitting in back seat); *Phillips*, *supra* (act of pointing gun at victim evidenced appellant's intent to cause serious bodily injury). Accordingly, Alvarado is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/22/2026